# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| EMERALD KALAMA CHEMICAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM D. ARENDT, <br><br> Defendant. | CASE NO. 3:18-cv-05649-RJB <br><br> ORDER ON DEFENDANT WILLIAM D. ARENDT'S MOTION TO DISMISS AMENDED COMPLAINT AND MOTION TO STAY DISCOVERY AND CONTINUE DEADLINES |

THIS MATTER comes before the Court on Defendant William D. Arendt's Motion to Dismiss Amended Complaint and Motion to Stay Discovery and Continue Deadlines. Dkts. 30, 31. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein. For the reasons discussed, the motion to dismiss should be denied in part and granted in part, and the motion to stay discovery and continue deadlines should be denied.

## BACKGROUND

**A. Procedural history.**

Plaintiff Emerald Kalama Chemical, LLC initiated this action in Cowlitz County Superior Court on July 20, 2018. Dkt. 1-1 at 1. The case was removed on August 13, 2018, and Plaintiff

filed the Amended Complaint, the operative complaint, on August 23, 2018. Dkts. 1, Dkt. 8. The Court denied a motion by Plaintiff to expedite discovery. Dkts. 9, 29. On September 27, 2018, Defendant William D. Arendt filed the pending motion to dismiss, Dkt. 30, and on October 16, 2018, Defendant filed the pending motion to stay discovery and continue deadlines. Dkt. 31. Both motions of Defendant's motions became ripe for consideration on October 26, 2018. *See* Dkts. 30, 31.

Under the existing Order Regarding Initial Disclosures and Joint Status Report, the parties must observe deadlines of October 29, 2018 for the Rule 26(f) conference and November 13, 2018 for filing a Joint Status Report. Dkt. 6.

**B. Amended Complaint.**

The following allegations are derived from the Amended Complaint.

Plaintiff, a Washington corporation, manufactures chemical products for distribution worldwide. Dkt 8 at ¶9. Plaintiff employed Defendant, who resides in Illinois, from approximately 2010 to January 31, 2018 as a Senior Research Fellow. *Id* at ¶10. While employed by Plaintiff, Defendant helped Plaintiff develop its dibenzoate plasticizers product offerings, and he assisted with their marketing, sale, and promotion. *Id*. at ¶¶11-13. Through the course of his employment by Plaintiff, Defendant gained access to confidential, protected and trade secret information. *Id*. at ¶15. Prior to separation, Defendant represented to Plaintiff that he would not consult or work for competitors, *id*. at ¶¶27-32, but in March of 2018, Plaintiff discovered that Defendant worked for or consulted with a competitor, Velsicol. *Id*. at ¶¶33-38. Defendant has allegedly used confidential, protected and trade secret information to develop Veliscol products that directly compete with Plaintiff's products. *Id*.

During the course of Defendant's employment, Defendant signed two documents, both of which are incorporated in the Amended Complaint. Under a 2010 Employee Invention and Confidential Information Agreement ("2010 Agreement"), which became "effective upon [Defendant's] employment," Defendant agreed not to disclose "either during or subsequent to my employment, any information or data confidential . . . without the Company's prior written consent." Dkt. 8-1 at 1. Confidentiality terms of the 2010 Agreement are incorporated by the second document, the 2018 Separation/Severance Agreement and Release of All Claims ("2018 Agreement"). Dkt. 8-2 at 3-5. Under the 2018 Agreement, signed on January 2, 2018 by Defendant only, consideration is fashioned "as severance" for employment ending on January 31, 2018. *Id*. at 1. The agreement sets out other terms, including a one (1) year non-compete/non-disparagement term. *Id*. at 4.

The Amended Complaint alleges seven separate claims, which are fashioned as follows:

Claim One: Breach of Contract

Claim Two: Breach of Fiduciary Duty/Duty of Loyalty

Claim Three: Violations of the Washington Uniform Trade Secrets Act (WUTSA)

Claim Four: Threatened Misappropriation of Trade Secrets

Claim Five: Interference with Contract or Business Expectancy

Claim Six: Interference with Present and Future Economic Relations

Claim Seven: Injunction.

Dkt. 8 at ¶¶43-82. Claim One has two counts, Count One, Breach of Confidentiality Obligations and Restrictions, and Count Two, Breach of Non-Competition Restriction. *Id*. at ¶¶43-50. In the Prayer for Judgment, the Amended Complaint requests: (1) injunctive relief, that Defendant be precluded from using, benefiting, retaining, disclosing, or misappropriating Plaintiff's

1 confidential information and trade secrets, and that Defendant be precluded from working with third-party Veliscol "for a length of time necessary to prevent irreparable harm"; (2) declaratory relief, that Defendant breached his one-year non-compete obligations; and (3) economic damages, fees, and costs. *Id*. at 20, 21.

**C. Defendant's motions.**

Defendant argues that, for all seven claims, the Amended Complaint fails to state a plausible claim. Dkt. 30. Defendant makes arguments specific to each claim that are discussed *supra*. *See id*.

Defendant also seeks to continue or stay deadlines while the motion to dismiss is resolved, because, Defendant argues, Defendant is likely to prevail on its motion to dismiss. Dkt. 31.

MOTION TO DISMISS

**A. Standard for Motion to Dismiss.**

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." *Id*. at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.

**B. Claim One: Breach of Contract.**

Defendant seeks dismissal of both counts of Claim One, breach of confidentiality obligations and restrictions (Count One) and breach of the non-competition restriction (Count Two), by attacking the sufficiency of the 2010 Agreement and 2018 Agreement.

*1. Count One: Breach of Confidentiality Obligations and Restrictions.*

Count One should be dismissed, Defendant argues, because the 2010 Agreement does not satisfy the elements of a contract. Dkt. 30 at 7, 8. Four elements are germane to breach of contract claims: duty, breach, causation, and damages. *Nw. Indep. Forest Mfrs.*, 78 Wn.App. 707, 712 (Div. II 1995). Applied here, the allegations of the Amended Complaint are sufficient. It is alleged that, under the 2010 Agreement, Defendant had the duty to "not . . . disclose . . . any information or data confidential to the Company . . . [including] information and data which are of a confidential or proprietary nature." Defendant allegedly harmed Plaintiff by transmitting confidential information to a personal email account and using the information to benefit Defendant and Plaintiff's competitors, Dkt. 8 at ¶44, allegations that satisfy these elements.

Defendant argues that the 2010 Agreement is "just a free-standing unilateral advisory" that fails for lack of consideration. Dkt. 30 at 7; Dkt. 35 at 3. As Plaintiff observes, however, it is alleged that the signatory to the agreement, Defendant, agreed to confidentiality provisions in exchange for the promise of future employment. Dkt. 32 at 2. *See* Dkt. 8-1 at 1 ("Effective upon my employment . . . I agree as follows"). This is at least a plausible theory of recovery, a contract built on mutuality of consideration. *See Machen, Inc. v. Aircraft Design, Inc.* 65 Wn.App. 319,

332 (Div. III 1992), *overruled on other grounds*; Schneller v. Hayes, 176 Wn. 115, 119-20 (1934).

Defendant also argues that the confidentiality provision of the 2010 Agreement is unenforceable because it is not reasonable in scope and amounts to a restraint on trade, interfering with Defendant's ability to use general knowledge to obtain future employment. Dkt. 30 at 7, 8. Defendant points to the confidentiality provision as overbroad, where it defines "confidential" as "[w]ithout limitation . . . information and data which are of a confidential or proprietary nature . . . or information not generally known to the public." *Id*. at 8, quoting Dkt. 8-1 at 1. This argument is premature and is better reached at a later stage. Even if the "without limitation" language were to be stricken as overbroad, the agreement's enforcement as a whole may depend on extrinsic information, e.g., what information Defendant has shared with Plaintiff's competitors, which may—or may not—fall within items properly enumerated as confidential. Making a legal finding about how to interpret the scope of the 2010 Agreement, without further context, would appear imprudent. Both cases cited by Defendant are out of district cases and procedurally distinguishable from the preliminary procedural posture of this case. *See Bodemer v. Swanel Beverage, Inc.* (reaching the merits of a confidentiality provision on a motion for summary judgment); *Service Centers of Chicago, Inc. v. Minogue*, 180 Ill.App.3d 447 (1st Dist. 1989) (reversing injunctive order of state trial court enjoining former employees from providing services to former employer's competitors).

  2.  *Count Two: Breach of Non-Competition Restriction.*

Defendant makes several arguments when attacking the plausibility of Count Two. First, Defendant argues, Count Two is not enforceable at law, because the non-compete provision in the 2018 Agreement is a naked restraint of trade, entered into at the conclusion of Defendant's

employment with no requisite underlying employment relationship. Dkt. 30 at 5, 6. While discovery may ultimately support Defendant's argument, at this stage the argument fails, because the facts alleged point to an existing employment relationship when Defendant executed the 2018 Agreement. According to the pleadings, Defendant signed the 2018 Agreement on January 2, 2018 and completed his employment on January 31, 2018.

Next, Defendant argues, the non-compete provision lacks valid consideration, because consideration referenced in the agreement relates only to the release of claims, not to the non-compete provision. Dkt. 30 at 5, 6. Defendant's argument finds support in the release clause of the 2018 Agreement, wherein the employee agreed to release the employer from all claims "[i]n consideration of receiving the severance benefits described above[.]" Dkt. 8-2 at 2. But this argument does not carry the day at the pleadings stage, because there is at least one other plausible interpretation, that severance was offered in exchange for all terms included in the 2018 Agreement. *See id*. at 1 ("[a]s consideration for this Agreement[.]") (emphasis added). Findings about interpreting the 2018 Agreement should be avoided; the undersigned only reaches the merits on plausibility.

Finally, Defendant argues, the non-compete provision fails for its lack of reasonableness, given an absence of geographic limitations and ambiguous, indefinite terms. Dkt. 30 at 5, 6. The argument is premature. Without making specific findings about specific terms, the Court observes that (1) this is a fact-intensive argument, better addressed with a full record following discovery; and (2) a severability clause of the 2018 Agreement precludes voiding the agreement on narrow grounds. Dkt. 8-2 at 4 ("[t]he provisions . . . are severable, and if any part of it is found to be unlawful or unenforceable, the other provisions . . . shall remain fully and enforceable to the maximum extent consistent with applicable law."

In sum, the Amended Complaint alleges a plausible claim for both counts of Claim One: Breach of Contract. Defendant's motion should be denied as to Claim One: Breach of Contract.

**C. Claim Three: Violations of the Washington Uniform Trade Secrets Act (WUTSA), and Claim Four: Threatened Misappropriation of Trade Secrets.**

Defendant argues that Claim Three and Claim Four, both which center on allegations of misappropriated trade secrets, fail on account of their failure to sufficiently allege a "trade secret" under the WUTSA. Dkt. 30 at 10-12.

The WUTSA defines "trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value . . . from not being generally known to . . . other persons who can obtain economic value from its disclosure or use; <u>and</u> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4) (emphasis added).

Applied here, the Amended Complaint sufficiently alleges a trade secret. Specifically, it is alleged that Plaintiff "has compiled trade secret information" that Defendant "has retained . . . used and disclosed or will use and disclose and otherwise misappropriate . . . on behalf of himself and others acting in concert[.]" Dkt. 8 at ¶¶56, 57. The Amended Complaint enumerates "trade secret information" to include:

> customer information; prospective customer information; financial information; patent information; product information; toll information; manufacturing information; new product and new technology information; employee information; laboratory information; global marketing information; idea pipeline information; and compilations, programs, devices, techniques, and processes[.]

Dkt. 8 at ¶ 56. It is plausible that this information falls within the WUTSA definition of trade secret. *See* RCW 19.108.010(4).

Defendant nitpicks individual items from the enumerated list, arguing that for various reasons individual types of information cannot be a trade secret. For example, because patents

are publicly available, Defendant argues, patents cannot "derive independent value . . . from not being generally known." Although Defendant may have identified problems with individually-enumerated items, the misappropriation claims should be viewed in their totality at the pleadings stage, and the pleadings are sufficient.

Defendant argues in the alternative that there is no plausible allegation of "misappropriation" as defined by the WUTSA. Dkt. 30 at 14, 15. Under the WUTSA, "misappropriation" is defined as the "[d]isclosure or use of a trade secret of another without express or implied consent by a person who (i) Used improper means[.]" RCW 19.108.010(2)(b). "Improper means" include "theft, bribery misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage[.]" RCW 19.108.010(1). Applied here, the allegations in the Amended Complaint satisfy the statutory definition, where it is alleged that Defendant had a duty to maintain secrecy, e.g., by terms of the 2018 Agreement, but he instead deliberately disclosed trade secret information to Plaintiff's competitor. Dkt. 8 at ¶¶24, 65, 74.

Defendant's arguments for dismissal of the two misappropriation claims, Claim Three: Violations of the WUTSA, and Claim Four: Threatened Misappropriation of Trade Secrets, are unpersuasive. Defendant's motion should be denied as to these claims, because the Amended Complaint states plausible claims under the WUTSA.

**D. Claim Two: Breach of Fiduciary Duty/Duty of Loyalty, Claim Five: Interference with Contract or Business Expectancy, and Claim Six: Interference with Present and Future Economic Relations.**

Defendant argues that Claim Two, Claim Five, and Claim Six are preempted by the WUTSA, because all three claims rely on the theory that Defendant misappropriated trade secrets or confidential information. Dkt. 30 at 17-19. In arguing for the WUTSA preemption, Defendant relies on *Thola v. Henschell*, 140 Wn.App. 70 (Div. II 2007). Under *Thola*, "a

plaintiff may not rely on acts that constitute trade secret misappropriation to support other causes of action." *Thola*, 140 Wn.App. at 82 (internal quotations omitted). *Thola* sets out a three-step process to determine whether the WUTSA preempts a civil claim: (1) assess the facts that support the plaintiff's civil claim, (2) ask whether those facts are the same as those that support the plaintiff's WUTSA claim, and (3) hold that the WUTSA preempts liability on the civil claim unless the common law claim is factually independent from the WUTSA claim. *Id*.

Defendant argues in the alternative that, for Claim Two, Claim Five, and Claim Six, the Amended Complaint fails to state a claim. Dkt. 30 at 19, 20.

For each claim, the Court will apply *Thola* and analyze whether the allegations are sufficient to state a claim. *Thola* is probably not binding precedent, because on two occasions Division I has declined to adopt the three-part test from *Thola*, a Division II case, and the Washington State Supreme Court has yet to resolve the split. *SEIU Healthcare Northwest Training Partnership v. Evergreen Freedom Foundation*, 427 P.3d 688, 696 (Div. I 2018); *Modumetal, Inc. v. Xtalic Corp.*, 425 P.3d 871, 882 (Div. I 2018). However, for purposes of considering Defendant's motion, the Court assumes *Thola* controls, because even if its precedent controls, its application is not outcome-determinative.

1. *Claim Two: Breach of Fiduciary Duty/Duty of Loyalty.*

First, applying *Thola*, allegations common to both the breach of fiduciary duty/duty of loyalty claim and the WUTSA claim overlap in part, arguably triggering preemption. For example, for the breach of duty claim, it is alleged that Defendant "retain[ed] and us[ed] confidential information of Plaintiff by forwarding that information to his personal account" and "retain[ed] confidential information electronically stored on Plaintiff's computers and electronic devices by forwarding that information to his personal email address[.]" Dkt. 8 at ¶53. Similarly,

for the WUTSA claim, it is alleged that Defendant breached his duty "to safeguard and maintain . . . the trade secret information . . . stored on its electronic devices." *Id.* at ¶59.

However, particular to the breach of duty claim, the Amended Complaint also alleges plausible, independent facts. It is alleged that Defendant, while employed, "[n]otif[ied] contacts and potential customers, including customers of [Plaintiff], that he was establishing a consulting business; [and] On information and belief, reach[ed] out to contacts established while he was working for Plaintiff for the purpose of exploring consulting arrangements." Dkt. 8 at ¶53. In contrast, the WUTSA claims center on whether Defendant retained and used trade secret information for his own and a competitor's benefit. *See id.* at ¶¶56, 57, 74. Based on the pleadings, WUTSA preemption is not warranted.

Second, the Amended Complaint states a claim for breach of fiduciary duty or duty of loyalty. To prevail the plaintiff must prove: (1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) causation. *Miller v. U.S Bank of Wash., N.A.*, 72 Wn.App. 416, 426 (Div. I 1994). Applying the plausibility standard, the elements of breach, injury, and causation are satisfied by the alleged theory that Defendant harmed Plaintiff by notifying potential customers of his intent to leave and exploring employment and consulting arrangements while working for Plaintiff.

Defendant's challenge for the first element, duty, is the more difficult question. It is alleged that Defendant "owed Plaintiff duties of loyalty while employed, requiring that he act at all times in Plaintiff's interest and not take actions materially detrimental to Plaintiff." Dkt. 8 at ¶52. Defendant argues that, because Defendant is incorporated in Delaware, Delaware law on fiduciaries applies, and under Delaware law, a fiduciary is one "vested with discretionary power to manage the business." Dkt. 35 at 6. In this case, Defendant continues, the Amended Complaint

does not allege that Plaintiff was a manager or managing member of the corporation. *Id*. Plaintiff, citing several Washington cases, including *Kieburtz & Assoc., Inc. v. Rehn*, 68 Wn.App. 260, FN2 (Div. I 1992), argues that the pleadings are sufficient, because Defendant was an employee of Plaintiff, and "[a]s a trusted agent, an employee owes the employer fiduciary duties." Dkt. 32 at 8.

If Washington law applies, the Amended Complaint has sufficiently alleged a fiduciary relationship, the first element, given allegations of an employer-employee relationship between Plaintiff and Defendant. At this point, the undersigned respectfully declines to make legal findings about whether Delaware or Washington law applies, although the issue could later determine whether this claim survives motions practice for trial. Importantly, the Amended Complaint does not allege that Plaintiff is a Delaware Corporation—that fact is solely based on counsel's representation. Therefore, based on the pleadings, all four elements have been satisfied, and the Amended Complaint states a claim for breach of fiduciary duty or duty of loyalty.

  2. *Claim Five: Interference with Contract or Business Expectancy.*

<u>First</u>, applying *Thola*, the Amended Complaint alleges plausible facts independent of those alleged in the WUTSA claims. The core allegation of the interference claim is that Defendant "has appeared at trade shows and events and other forums with representatives of Veliscol promoting Velsicol and/or [Defendant's] competitor consulting business." Dkt. 8 at ¶¶78, 80. Making appearances at a trade show is not the kind of activity contemplated by protections of the WUTSA. *See* RCW 19.108 *et seq*. Notably, however, there is also overlap between the interference claim and the WUTSA claims. *Compare* Dkt. 8 at ¶81(c) ("It is inevitable that [Defendant] will make and continue to make the improper use of confidential and

proprietary business information"); and *id*. at ¶61 ("Because of his knowledge of the details of [Plaintiff's] confidential business and trade secrets, [Defendant] will inevitability disclose, use, or otherwise misappropriate Plaintiff's trade secret information").

Second, on the issue of whether the Amended Complaint states a claim for interference with contract or business expectancy, the Court agrees with Defendant that the Amended Complaint fails to state a claim. The elements for a claim for tortious interference with a contractual relationship or business expectancy are:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn. 2d 133, 157 (1997).

Applied here, the Amended Complaint advances the theory that Defendant interfered with a contractual relationship or business expectancy by appearing at trade shows to promote Plaintiff's competitor. Dkt. 8 at ¶¶78, 79. It is alleged that the purpose of Defendant's promotion was to interfere with Plaintiff's customers, which has caused Plaintiff harm "in an amount no less than $350,000." *Id*. at 81. While these allegations may suffice for purposes of some elements of an interference claim, e.g., damages, there is no mention of element two, Defendant's knowledge of Plaintiff's business relationship or expectancy. Perhaps for this reason, Plaintiff's briefing for Claim Five incorporates allegations of Claim Six. *See* Dkt. 32 at 17, ln. 8. Nonetheless, this is the type of defect that could be cured by amendment, so dismissal should be without prejudice.

3. *Claim Six: Interference with Present and Future Economic Relations.*

The Amended Complaint alleges that Defendant "has interfered with the present and future economic relations of Plaintiff," Dkt. 8 at ¶84, but there is no factual theory articulated for

ORDER ON DEFENDANT WILLIAM D. ARENDT'S MOTION TO DISMISS AMENDED COMPLAINT AND MOTION TO STAY DISCOVERY AND CONTINUE DEADLINES - 13

this claim. *See id*. at ¶¶84-87. Instead, the paragraphs recite the elements for this claim, which are legal conclusions. The Court cannot assess the applicability of *Thola* and plausibility of this claim without facts. *See id*. The claim should be dismissed without prejudice.

In summary, Claim Two: Breach of Fiduciary Duty/Duty of Loyalty, is not preempted by the WUTSA and states a claim upon which relief can be granted. As to Claim Two, Defendant's motion should be denied. Defendant's motion should be granted as to Claim Five: Interference with Contract or Business Expectancy, and Claim Six: Interference with Present and Future Economic Relations, which should be dismissed without prejudice for failure to state a claim.

**E.  Claim Seven: Injunction.**

In Claim Seven it is alleged that "Plaintiff is likely to succeed on the merits . . . and the balance of equities . . . weighs in favor of the issuance of a preliminary and/or permanent injunction against [Defendant]." Dkt. 8 at ¶89. Further, it is alleged, "[u]nless restrained by this court, [Defendant] will continue the complained of acts." *Id*. at ¶90.

Defendant argues that Claim Seven is not a claim, but rather is a request for relief. Dkt. 30 at FN1. Plaintiff responds by arguing that Defendant's motion improperly elevates form over substance, because the injunctive relief "is tied to its preceding substantive claims" by incorporating factual allegations from elsewhere in the Amended Complaint. Dkt. 32 at 17.

The Court agrees with Defendant. As to Claim Seven: Injunction, Defendant's motion should be granted and the claim dismissed, because injunctive relief is a remedy, not a standalone claim. However, because the prayer for relief also requests injunctive relief, as a practical matter, dismissal of this claim should present no barrier to whether request for injunctive relief should ultimately be granted. *See* Dkt. 8 at 20, 21.

MOTION TO STAY DISCOVERY AND CONTINUE DEADLINES
===

Defendant argues that discovery should be stayed or continued pending Defendant's motion to dismiss because of the likelihood that Defendant will prevail on the merits and the case will be dismissed. Dkt. 31.

Because the Court will not grant Defendant's motion to dismiss in its entirety, Defendant's motion to stay discovery and continue deadlines should be denied as moot.

\* \* \*

THEREFORE, it is HEREBY ORDERED:

(1) Defendant's Motion to Dismiss First Amended Complaint (Dkt. 30) is GRANTED IN PART and DENIED IN PART as follows:

Claim Five: Interference with Contract or Business Expectancy and Claim Six: Interference with Present and Future Economic Relations are DISMISSED WITHOUT PREJUDICE. Claim Seven: Injunction is DISMISSED. The motion is OTHERWISE DENIED.

(2) Defendant's Motion to Stay Discovery and Continue Deadlines is DENIED as moot.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 1st day of November. 2018.

ROBERT J. BRYAN
United States District Judge